IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


BILL A. CORBIN,
    Plaintiff,

vs.                                  Case No: 5:05cv193/RS/EMT

SUPREME COURT OF FLORIDA, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

       This cause is before the court upon Plaintiff's third amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 21).  Leave to proceed in forma pauperis has been granted (Doc. 5).  From a review of the complaint, it appears this court does not have subject matter jurisdiction; therefore, dismissal of this action is warranted.

       Plaintiff seeks redress for the allegedly wrongful suspension of his license to practice law and his subsequent disbarment.  Plaintiff names twenty-seven (27) Defendants in this action, six of which are named "only to facilitate service of process"[1] (Doc. 21 at 2 and continuation pages).  The remaining twenty-one (21) Defendants include the seven justices of the Florida Supreme Court; four former justices of the Florida Supreme Court; the Honorable Joseph Tarbuck, a state circuit court judge; the Honorable Nancy Gilliam, a former state circuit court judge; John F. Harkness, Jr., Executive Director of The Florida Bar (the Bar); John Boggs, Staff Counsel for the Bar; John Berry, former Staff Counsel for the Bar; Luain Hensel, Assistant Counsel for the Bar; Edward Iturralde,

---

[1] These Defendants include the Supreme Court of Florida, State of Florida, The Florida Bar, the Chief Financial Officer of the State of Florida, the Attorney General for the State of Florida, and the State Attorney for the Fourteenth Judicial Circuit.

Assistant Counsel for the Bar; Olivia Klein, Assistant Counsel for the Bar; and James Wells, Staff Auditor for the Bar (*id.*).

Plaintiff alleges the following facts in support of his claims.[2]  On June 20, 1996, the Bar filed a formal complaint against Plaintiff alleging that he violated the rules of professional conduct by making a misrepresentation to the tribunal during Plaintiff's representation of a client on a motion for summary judgment in a state court proceeding (Doc. 21 ¶ 2).  Plaintiff alleges the charge was false (*id.*).  On February 20, 1997, Judge Gilliam, acting as a referee, "rubber-stamp[ed]" the allegation and recommended that Plaintiff's attorney license be suspended for a period of six months (Doc. 21 ¶ 3).  Plaintiff petitioned for review by the Florida Supreme Court (Doc. 21 ¶ 4).  On October 30, 1997, the supreme court upheld the suspension, but imposed a lesser penalty of a 90-day suspension (*id.*).  Plaintiff alleges this decision constituted a blatant disregard of the rules and precedents (*id.*).

On December 19, 1997, the Bar filed another formal complaint against Plaintiff alleging that he was practicing law without a license and seeking to have Plaintiff disbarred (Doc. 21 ¶ 6).  Plaintiff alleges that such charges were filed without notice, probable cause, or a complete investigation (*id.*).  The Bar subsequently voluntarily dismissed this charge (Doc. 16 ¶ 67).

In January of 1998, the Bar seized Plaintiff's trust account records, pursuant to a subpoena allegedly issued without probable cause (Doc. 21 ¶ 8; Doc. 16 ¶¶ 38, 69).  On April 13, 1998, after reviewing a "sampling" of Plaintiff's client trust account records, the Bar filed a petition for emergency suspension of Plaintiff's attorney license, accusing Plaintiff of stealing a total of $75,828.50 from client funds (Doc. 21 ¶ 9).  Plaintiff alleges that emergency circumstances did not exist, that no one had complained about Plaintiff's bookkeeping practices, and that Defendants knew that more financial records were available (*id.*).  On April 22, 1998, the Florida Supreme Court entered a temporary injunction suspending Plaintiff from the practice of law and freezing the funds in Plaintiff's client trust account, despite Plaintiff's sworn response to the petition in which he denied the allegations (Doc. 21 ¶ 10; Doc. 16 ¶ 75).  Plaintiff states that the supreme court took this

---

[2] The court conveys as facts the factual allegations in Plaintiff's third verified amended complaint, as clarified in his second verified amended complaint (Docs. 16, 21).

Case No.: 5:05cv193/RS/EMT

action without conducting an investigation, without affording him a hearing, and without proof of the allegations (Doc. 21 ¶ 10). Plaintiff further states that on June 8, 1998, the Bar filed a formal complaint falsely accusing him of stealing client funds (Doc. 21 ¶ ¶ 11, 12). On May 24, 1999, Judge Gilliam recommended that Plaintiff be disbarred, even though the decision was not supported by the evidence or the law (Doc. 21 ¶ 14). Plaintiff petitioned the Florida Supreme Court for review, and on June 27, 2001, the court disbarred Plaintiff and ordered a "second trial" to allow the Bar to "prove their charges" (Doc. 21 ¶ 16). During the "second trial" on April 22, 2002, the Bar allegedly conceded that some of the charges were false, but the referee, Judge Tarbuck, "covered up" this misconduct by issuing a protective order preventing Bar officials from having to "answer for" their misconduct and denying Plaintiff's requests for relief (Doc. 21 ¶ 17). On July 8, 2003, the Florida Supreme Court ordered Plaintiff to pay restitution in the amount of $67,917.70 and court costs in the amount of $16,077.14, despite a lack of evidence supporting the judgment (Doc. 21 ¶ 18).

On February 7, 2000, while the proceedings regarding the alleged stealing of client funds were pending, the Bar filed a formal complaint against Plaintiff alleging "technical rules violations," including failure to comply with a client's requests for information and failure to safekeep client property (Doc. 21 ¶ 15; Doc. 16 ¶ 68). The Bar subsequently voluntarily dismissed the charge (*id.*).

Plaintiff alleges Defendants' conduct violated his rights to due process and equal protection, and constituted an unlawful seizure of his license to practice law, an unlawful taking of his license without just compensation, and cruel and unusual punishment (Doc. 21 at 4). Plaintiff requests a declaratory judgment that the rules, practices, and procedures regarding the conduct and discipline of attorneys, as well as the state procedural rule regarding summary judgment in civil actions, are unconstitutional (*id.*). He also seeks an injunction voiding the judgment against him or enjoining its enforcement, as well as an injunction enjoining Defendants from applying the rules regarding attorney conduct and discipline to other attorneys (*id.*). Plaintiff additionally seeks an order requiring Defendants to retract false statements that were made about him (*id.*). Finally, Plaintiff requests compensatory and punitive damages (*id.*).

It is well established that federal district courts exercise only original jurisdiction; they lack appellate jurisdiction to review state court decisions reached in administrative and judicial proceedings. District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303,

1311-12, 75 L. Ed. 2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L. Ed. 362 (1923).  The Rooker and Feldman decisions have become known as the Rooker-Feldman doctrine.  Under the Rooker-Feldman doctrine, federal district courts do not have jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.  Review of those decisions may be had only in [the Supreme Court on certiorari]."  Berman v. Fla. Bd. of Bar Exam'rs, 794 F.2d 1529, 1530 (11th Cir. 1986) (quoting Feldman, 460 U.S. at 486).  Furthermore, under the Rooker-Feldman doctrine, a federal court "may not decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment.'"  Datz v. Kilgore, 51 F.3d 252, 253 (11th Cir. 1995) (citing Staley v. Ledbetter, 837 F.2d 1016, 1018 (11th Cir. 1988) (quoting Wood v. Orange County, 715 F.2d 1543, 1546 (11th Cir. 1983)).  A federal claim is "inextricably intertwined" with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."  Datz, 51 F.3d at 253-54 (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L. Ed. 2d 1 (1987) (Marshall, J., concurring)).  This court cannot determine such inextricably intertwined claims even if the federal claim was not raised in state court, as long as there was a reasonable opportunity to do so.  Liedel v. Juvenile Court of Madison County, Ala., 891 F.2d 1542, 1545 and n.4 (11th Cir. 1990) (citing Wood, 715 F.2d at 1546-47).

In the instant case, Plaintiff's complaint requests that the federal district court declare that the disciplinary rules and procedures as applied to him violated the Constitution, and essentially void the state court judgment against him by enjoining its enforcement.  This would effectively nullify the state court orders suspending his attorney license, disbarring him, and ordering him to pay restitution and court costs.  Additionally, Plaintiff had a reasonable opportunity to raise his constitutional claims in state court.  Furthermore, although Plaintiff requests a declaratory judgment that the state rules, practices, and procedures regulating attorney conduct and discipline are unconstitutional, as well as an injunction enjoining Defendants from enforcing the rules against other attorneys, the crux of Plaintiff's claims are not that the rules and procedures are constitutionally suspect, but that the discretion given Defendants was exercised unconstitutionally in his particular case.  Thus, the complaint should be dismissed for lack of jurisdiction under the

Case No.:  5:05cv193/RS/EMT

Rooker-Feldman doctrine. *See* Berman, 794 F.2d at 1530; Liedel, 891 F.2d at 1545-46; Kimball v. The Florida Bar, 632 F.2d 1283, 1285 (5th Cir. 1980) (citing Sawyer v. Overton, 595 F.2d 252 (5th Cir. 1979));[3] Fox v. Florida, No. 04-16027, 2005 WL 1415998, at **2 (11th Cir. June 17, 2005); *see also* Patmon v. Michigan Supreme Court, 224 F.3d 504, 510-11 (6th Cir. 2000); Johnson v. Supreme Court of Illinois, 165 F.3d 1140, 1141-42 (7th Cir. 1999); Neal v. Wilson, 112 F.3d 351, 356 (8th Cir. 1997); Stern v. Nix, 840 F.2d 208 (3d Cir. 1988).

Accordingly, it is respectfully **RECOMMENDED**:

That this action be dismissed for lack of jurisdiction.

At Pensacola, Florida this 7th day of June 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Case No.:  5:05cv193/RS/EMT